UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-Civ-09-20017-LENARD
MAGISTRATE JUDGE P.A. WHITE

FRANCISCO EDDY SURI,          :

    Petitioner,          :

v.          :          <u>REPORT OF</u>
                             <u>MAGISTRATE JUDGE</u>

WALTER A. McNEIL,          :

    Respondent.          :
_____

## I. Introduction

Francisco Suri, who is presently confined at Taylor Correctional Institution Annex in Perry, Florida, has filed a <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, attacking his conviction and sentence in case number 01-35463, entered in the Eleventh Judicial Circuit Court for Miami-Dade County.

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

The Court has before it the petition for writ of habeas corpus, the Respondent's response to an order to show cause and appendix of exhibits.

## II. Procedural History

Suri was charged with two counts of lewd and lascivious molestation on a child under twelve. [DE# 15 at P9-12].

Counsel filed a motion to suppress Suri's confession, arguing police did not honor his request for counsel and threatened him with losing money the FBI owed him and going to jail without bond if he refused to provide a statement. [DE# 15 at P13-14]. Two officers and Suri testified at the suppression hearing. The officers testified Suri voluntarily agreed to speak with them, never requested a lawyer and was not told he would lose money the FBI owed him if he did not confess. Suri testified officers ignored his request for a lawyer and threatened him with losing the FBI money if he did not request. Suri denied that he confessed to molesting the victim during the interview. At the end of the suppression hearing, the trial court found as follows:

> I find that the defendant was properly given Miranda Rights. I find that he knowingly, intelligently, freely, and voluntarily waived his Miranda rights. I find that all statements given by the defendant were knowingly, freely and voluntarily given. I find that Detective Tamayo is credible. I find that the defendant is not credible. Motion to suppress is denied in its entirety.

[DE# 24 at 63].

At trial, Officer Tamayo testified that Suri confessed to several incidents with the victim. First, the child's mother walked into the living room the three shared while the child had her hand inside Suri's shorts. He explained the child instigated this event. He claims the child approached him a second time and fondled him. He claimed he brought this incident to the mother's attention because the child was acting out sexually. Suri ultimately confessed to a third incident. The jury saw a videotaped interview in which the victim described several incidents of molestation in graphic detail. The victim's mother also testified.

2

In closing argument, the prosecutor made several comments to which defense counsel objected:

> [by the prosecutor]: ... [The victim] tells you that the defendant told her his semen was milk. She tells you how the defendant would tell her to suck it because her mother does it. Let's talk about that. That is a child abuser talking. That is a child molester talking.

[DE# 15, T. 377-78].

At side-bar, defense counsel objected that the prosecutor was commenting on propensity as a child molester. The court sustained the objection. [DE# 15, T. 378]. The court also sustained defense counsel's objection when the prosecutor urged the jury to "look at all this evidence ... and I ask you to convict this pedophile." [DE# 15, T. 429].

The prosecutor argued Suri took away the child victim's innocence:

> Unfortunately, that child, she knows adult things, things that no seven year-old should have any idea about. He took her innocence away for his sick thrill.

The court sustained defense counsel's objection. [DE# 15, T. 379].

Defense counsel objected that a number of the prosecutor's arguments constituted burden-shifting:

> There is no evidence, there is no evidence that anyone told the child what to say on that video tape. There is

3

no evidence.

...

There is no evidence that the mother told the child to say those things on the video tape.

[DE# 15, T. 380].

There is absolutely no competent evidence in the case that suggests that [the victim's mother] was having an affair [with Quinn Kait].

[DE# 15, T. 408].

Another thing that the Defense Counsel said is that Mr. Suri came into $49,000.00 in cash. So that is an awful lot of money. But there is no evidence that came from the witness stand in this case that said he received $49,000.00.

[DE# 15, T. 408].

Then [defense counsel] further says, she goes upstairs and asked her where is the money. That did not happen in this trial.

[DE# 15, T. 409].

The court overruled defense counsel's burden shifting objection for each of these comments. [DE# 15, T. 380, 408-09].

Regarding propriety of prosecutor talking to witness to prepare them for trial, the prosecutor stated:

What would defense counsel have me do? Bring in a ten year-old, without having seen her, without ever speaking to her, put her on the stand, and say, hi, start telling

4

> me about the horrific abuse that happened to you. I met
> the child. I spoke to the child.

[DE# 15, T. 382].

Defense counsel's objection that this referred to facts not in evidence was overruled. [DE# 15, T. 382].

The State's theory was that the victim kept the abuse secret for so long because she was ashamed and did not want the Petitioner to throw her and her mother out of the apartment they all shared. Counsel argued:

> Sexual abuse is a dirty secret. Victims feel ashamed.

[DE# 15, T. 382-83].

The court sustained defense counsel's objection that this was improper argument. [DE# 15, T. 382-83].

The prosecutor argued the victim's mother made some bad choices -- dating Suri who was thirty years her senior, being on food stamps, and failing to immediately report the molestation -- but that these bad choices do not mean the molestation did not happen:

> [by the prosecutor] [The victim's mother] might not have
> had the best immediate reactions to what was going on.
> But that doesn't mean this didn't happen. Don't punish
> the child for the mothers early missteps.

[DE# 15, T. 384].

Defense counsel objected that this was improper argument and reserved a motion. The court overruled the objection. [DE# 15, T.

384].

The defense suggested that the victim's mother did not immediately report the offense because she was trying to extort money from Suri. The prosecutor argued there were several reasons why this theory was not true:

> She wouldn't have mentioned to the police Quinn Kait, the
> younger man. She wouldn't have told the police she took
> $200.00 out of their checking account.

[DE# 15, T. 387].

Defense counsel objected that the prosecutor referred to facts not in evidence. The court instructed the jurors to "rely on their own recollections of the evidence." [DE# 15, T. 387].

Defense counsel also objected when the prosecutor showed the jury a copy of the verdict form during closing. The court heard argument at side-bar and overruled the objection when defense counsel could not provide any authority finding this improper. [DE# 15, T. 392-93].

The prosecutor began reading defense counsel's opening statement to the jury during closing argument. Counsel objected because she had not seen the document being displayed. [DE# 15, T. 406]. At side bar, counsel apparently saw that the document was a transcript of counsel's opening statement and withdrew the objection. [DE# 15, T. 407].

The prosecutor characterized the defense theory of the case regarding the mother's alleged extortion of Suri and urged the jury to reject it:

I think the logical inference probably was by the
question that he went into the bank and some how on 11-13
deposited about $9,880.00 and the very next day, because
this very nasty, ugly woman is extorting him.
MS. WALSH: Objection, denigrating.
THE COURT: Side bar.
...
MS. WALSH: She said this very ugly, nasty woman.
MS. DENARO: I didn't mean you.
MS. WALSH: Ugly, nasty. And my argument, Judge --
MS. DENARO: I was not referring to Ms. Walsh.
MS. WALSH: She is referring to [the victim's mother]. My
argument, Judge, is, when she makes a statement like
this, having this ugly, nasty woman did this. And
denigrating Defense, making it seem like, who would
probably believe this. This is preposterous, to almost a
cartoon affect, and to denigrate Defense in that way,
there are other ways to say it.
[DE# 15, T. 415-16].

The trial court overruled the objection. [DE# 15, T. 416].

Defense counsel objected when the prosecutor began reading
from Suri's statement to police, because the document was not in
evidence:

[F]inally the defendant makes a confession in this case.
And I want to read it to you, I don't want to mystique or
paraphrase exactly what the defendant says. This was out
of the detective's police report and what he testified
to, which is codified in the report. ... [The detective]
says that Mr. Suri stated, he was on the bed fondling

7

[the victim's mother] --
[DE# 15, T. 427].

The court overruled the objection. [DE# 15, T. 427].

Finally, the prosecutor argued the police conducted a thorough investigation:

He said that he had some honest concerns when the matter first came in and he was not going to jump, he was going to investigation. And that is what he did. Did he seem like a liar? It is up to you to determine. And it is not up to me saying he isn't or her saying he is. Look at him, did he strike you as a liar? Did he strike you as an honest police officer explaining what happened? That is purely for you to decide. Obviously I submit to you he was credible and honest when he told you what happened in this investigation.

He followed up on those concerns, okay. He told you he spoke to Mr. Quinn Kait. He spoke to Zuily. He spoke to [the victim's mother] a couple of times. He kept her there a long time. It was clear from the testimony she probably didn't want to be there for two days, but she said she would stay and assist. He continued to talk to her. She cooperated. The child cooperated. The child gave a forensic interview at the Christy House. Mercy told you about that. They are trained to deal with cases like that. To ask non leading questions. He viewed that and took that into consideration also.

Now, I submit that he was fair minded, careful, and cautious and thorough in his investigation just the way you all would hope a police officer would be when people

8

are waging serious accusations. And I submit to you he took it seriously as he does all his cases and was very careful in his investigation.

Now, a big part of Ms. Walsh' argument right now was he must be lying because he didn't tape record this, consequently he didn't tape record this, he is not to be believed, he is a liar, forget about it. But what did he tell you? And I specifically took down notes as to what he says. First of all he said that lots of defendants don't want to go on tape, it is not a big deal, it is not new, it is not novel, it happens all the time, okay. And in his experience that is common. The defendant didn't want to be taped so he respected his request. Now is he to be -- obviously he respected his request, it is better to speak to him and get something from him and take down notes of what he says rather than the defendant saying if you tape record me, I'm not going to cooperate and talk with you. It happens.

[DE# 15, T. 422-23].

Defense counsel did not object.

Defense counsel moved for mistrial based on several of the foregoing objections. The court denied the motion:

MS. WALSH: Judge, I reserved several motions. At this time I would like to make my motions, they are motions for mistrial based on the comments that were made in closing argument, in particular the combination of [the prosecutor's] comments regarding that is a child molester and a child abuser. That is typical language that case law does not permit or allow.

9

THE COURT: Motion is denied. What else?

MS. WALSH: Also in conjunction with [the prosecutor's] labeling of my client as a pedophile also is prohibited by case law of evidence of propensity and type.

Also I reserved a motion when [the prosecutor] stated don't punish the daughter for the mother's behavior. I'm making a motion for mistrial based on the prejudicial affect of that comment.

THE COURT: Which is what?

MS. WALSH: Insinuating that the daughter would some how be punished if the defendant was found not guilty.

And also I made a motion during [the prosecutor's] comments about a lack of evidence as to all the statements in my opening. I believe that is burden shifting and I believe it is also a comment on silence and I'm moving for a mistrial based on those comments.

THE COURT: Motion is denied.

[DE# 15, T. 452-53].

The jury found Suri guilty of both counts. [DE# 15 at P148-49, 242-44]. The court imposed two concurrent twenty-five year sentences. [DE# 15 at P273-74].

On direct appeal, Suri argued the trial court erred by refusing to strike a biased juror. [DE# 15 at P174]. The Third District Court of Appeal affirmed because trial counsel had failed to preserve the issue for appeal. <u>Suri v. State</u>, 937 So. 2d 216 (Fla. 3d DCA 2006) (3D04-2022). The Florida Supreme Court denied discretionary review on February 5, 2007. <u>Suri v. State</u>, 950 So. 2d 1238 (Fla. 2007) (SC06-2020).

Suri filed a pro se motion for reduction or modification of

his sentence on or about March 27, 2007, which the trial court summarily denied on April 5, 2007. [DE# 15 at P389, 391]; <u>see</u> [DE# 15 at P320].

Suri filed a petition for writ of habeas corpus in the Third District on November 6, 2007. [DE# 15 at P318]. He argued appellate counsel was ineffective for failing to raise on appeal the following preserved errors: (1) denial of Suri's motion for mistrial; (2) denial of Suri's motion to suppress. The Third District summarily denied the petition on August 25, 2008, and denied rehearing on September 15, 2008. <u>Suri v. State</u>, 990 So. 2d 1081 (Fla. 3d DCA 2008) (3D07-2900).

Suri filed the instant petition on December 30, 2008.[1] He argues appellate counsel was ineffective for failing to raise on direct appeal: (1) preserved prosecutorial misconduct and (2) the denial of Suri's motion to suppress his confession.

### III. Statute of Limitations & Exhaustion

The Respondent concedes the instant petition was timely filed and the claims were exhausted in State court.

### IV. Standard of Review

A prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the

---

[1] The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's petition for writ of habeas corpus. <u>Adams v. United States</u>, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

facts in light of the evidence presented" to the State court. 28 U.S.C. § 2254(d)(1), (2); see Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Fugate v. Head, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. Hall v. Head, 310 F.3d 683, 690 (11th Cir. 2002) (citing Williams, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. See Early v. Packer, 537 U.S. 3, 8 (2002); Parker v. Sec'y, Dep't of Corr., 331 F.3d 764, 775-76 (11th Cir. 2003).

So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. Id. Further, a federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).

Suri seeks habeas relief based on ineffective assistance of

appellate counsel. The United States Supreme Court clearly established the law governing ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>Strickland</u> requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced him. <u>Id.</u> at 690. As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. <u>Id.</u> The judiciary's scrutiny of counsel's performance is highly deferential. <u>Id.</u> at 689. To render effective assistance on appeal, counsel need not present every argument, regardless of merit, requested by a petitioner. See <u>Jones v. Barnes</u>, 463 U.S. 745, 750 (1983). A petitioner does not have a right to compel appellate counsel to press non-frivolous points requested by the petitioner if appellate counsel determines, as a matter of professional judgment, that those issues should not be raised. <u>See</u> <u>Sullivan v. Wainwright</u>, 695 F.2d 1306, 1309 (11th Cir. 1983).

As to the second prong, a defendant establishes prejudice due to ineffective appellate counsel if the omitted claim would have had a reasonable probability of success on appeal. <u>Joiner v. United States</u>, 103 F.3d 961 (11th Cir. 1997). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. <u>Strickland</u>, 466 U.S. at 697.

To obtain habeas relief, Suri must show the state court "applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner" when it rejected his claims of ineffective assistance of counsel. <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002).

<u>V. Discussion</u>

I. <u>Closing Aruqment</u>

Suri argues appellate counsel should have raised the

prosecutor's preserved improper comments on appeal which were inflammatory, shifted the burden of proof and were improper.

Florida courts allow attorneys wide latitude to argue to the jury during closing argument. Thomas v. State, 748 So. 2d 970, 984 (Fla. 1999). Logical inferences may be drawn and counsel is allowed to advance all legitimate arguments. Id. Florida trial courts have discretion to control prosecutorial comments. Florida appellate courts will not reverse absent an abuse of discretion. See Nowell v. State, 998 So. 2d 597 (Fla. 2008). Florida appellate courts look at the closing argument as a whole to determine whether the trial court abused its discretion. Merck v. State, 975 So. 2d 1054, 1061 (Fla. 2007). An error is harmless if the appellate court can determine beyond a reasonable doubt the comment did not contribute to the verdict. Bigham v. State, 995 So. 2d 207, 214 (Fla. 2008).

Suri identifies the following inflammatory comments in the State's closing argument:

"this is a child abuser talking, that is a child molester talking"
"He took her innocence away for his sick thrill"
"sexual abuse is a dirty secret. Victims feel ashamed"
"I ask you to convict this pedophile"

The court sustained defense counsel's objections to each of the foregoing and instructed the jury to disregard the pedophile comment.

"It is clearly improper for the prosecutor to engage in vituperative or pejorative characterizations of a defendant or witness." Gore v. State, 719 So. 2d 1197, 1201 (Fla. 1998); see

<u>Lewis v. State</u>, 377 So. 2d 640 (Fla. 1979) (improper to put the character of the accused in issue); <u>Donaldson v. State</u>, 369 So. 2d 691 (Fla. 1st DCA 1979). Despite the impropriety of such references, prosecutorial "name-calling" will result in reversal only if the comments become such a feature of trial that the accused's right to a fair trial is prejudiced. <u>Reaves v. State</u>, 639 So. 2d 1 (Fla. 1994).

The prosecutor's reference to Suri as a "child abuser," "child molester" and "pedophile" were improper attacks on Suri's character. The prosecutor's arguments that Suri took the victim's innocence away for a "sick thrill" and that sexual abuse is a "dirty secret" for which victims "feel ashamed" were also improper. Although these comments were improper, they were not so prejudicial as to vitiate the fairness of the entire trial. <u>See</u> <u>Esty v. State</u>, 642 So. 2d 1074 (Fla. 1994) (comments that defendant was a "dangerous, vicious, cold-blooded murderer" from whom police and the justice system "cannot protect us" was improper but were not so prejudicial as to vitiate the fairness of the entire trial; trial court did not abuse its discretion by sustaining the objection, instructing the jury to disregard the comment, and denying mistrial). The trial court did not abuse its discretion by sustaining each of the objections and issuing a curative instruction. As no reversible error occurred in the trial court, an appeal raising these issues would not have been successful.

Suri identifies the following allegedly burden-shifting comments:

"there is no evidence that anyone told the child what to say on that video tape"

"there is no evidence that came from the witness stand in

this case that said [Suri] received $49,000.00"

"There is absolutely no competent evidence in the case that suggests that [the victim's mother] was having an affair [with Quinn Kait]"

"Then [defense counsel] further says, she goes upstairs and asked her where is the money. That did not happen in this trial"

"don't punish the child for the mother's early missteps"

The trial court overruled objections to each of these comments.

It is error for a prosecutor to "make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt." Gore, 719 So. 2d at 1200. However, a prosecutor may fairly comment on the uncontradicted or uncontroverted nature of the evidence or respond to the defense's argument. State v. Sheperd, 479 So. 2d 106, 107 (Fla. 1985).

The foregoing arguments did not improperly shift the burden of proof. Instead, the prosecutor fairly commented on the evidence and addressed the defense's theory that the victim's mother was irresponsible, delayed in reporting the offense, and tried to extort money from Suri. See Morrison v. State, 818 So. 2d 432 (Fla. 2002) (comment directing the jury to consider the evidence presented is not impermissible); Lubin v. State, 963 So. 2d 822 (Fla. 4th DCA 2007) (argument that there was no evidence defendant's fingerprint got onto the vehicle at a time other than the offense was a fair comment on the evidence and did not shift the burden of proof). Even if the comments were improper, they were not so prejudicial as to have inappropriately affected the jury's

decision. Accordingly, the trial court did not abuse its discretion by overruling objections to these comments and appeal raising these grounds would not have succeeded.

Suri submits several comments constituted improper argument. Two of the comments allegedly refer to facts not in evidence. First, the prosecutor explained it was not improper to have discussed the case with the child before trial:

"What would defense counsel have me do? ... I met the child. I spoke to the child"

Second, the prosecutor argued the defense theory that the victim's mother was extorting money from Suri was not true because:

"She wouldn't have told the police she took $200.00 out of their checking account."

The trial court overruled defense counsel's objection to the first comment and instructed the jurors to "rely on their own recollections of the evidence" as to the second comment.

It is impermissible for a prosecutor to comment in closing argument upon matters outside the record. <u>Wheeler v. State</u>, 425 So. 2d 109, 110-111 (Fla. 1st DCA 1982), approved, <u>State v. Wheeler</u>, 468 So. 2d 978 (Fla. 1985).

The comments at issue did not improperly refer to facts outside the evidence. The first comment responded to defense counsel's suggestion on cross-examination that it was improper for the prosecutor to meet with the child victim prior to trial. <u>See</u> (T. 263) (asking the child victim who she "practiced" with before

trial, and whether she "practiced" with the prosecutor a lot). To
the extent the second comment referred to a banking issue that was
not before the jury, the court immediately corrected the error with
a curative instruction. Neither of these comments constituted
reversible error had counsel raised them on appeal.

The prosecutor showed the jury the verdict forms during
closing. The court overruled the objection because defense counsel
could not support the objection with any law.

Counsel may use demonstrative exhibits to aid the jury's
understanding when relevant to the issues in the case, but only if
the exhibits constitute an accurate and reasonable reproduction of
the object involved. Alston v. Shiver, 105 So. 2d 785, 791 (Fla.
1958); Brown v. State, 550 So. 2d 527, 528 (Fla. 1st DCA 1989).
Whether to allow the use of a demonstrative exhibit is within the
trial court's discretion. See First Fed. Savings & Loan v. Wylie,
46 So. 2d 396 (Fla. 1950).

Here, the prosecutor showed the jury a copy of the verdict
form during closing argument. Suri does not contend the form was an
inaccurate copy or contained any legal errors. Therefore, the trial
court did not abuse its discretion by overruling defense counsel's
objection. See Milson v. State, 832 So. 2d 897 (Fla. 3d DCA 2002)
(trial court did not abuse its discretion by allowing prosecutor to
use a powerpoint presentation in closing to illustrate the verdict
form). This ground would have failed had counsel raised it on
appeal.

The prosecutor read a portion of defense counsel's opening
statement for the jury during closing. Defense counsel initially
objected but then withdrew the objection when it became clear the

18

prosecutor was simply referring to a portion of the trial transcript. No error occurred that appellate counsel could have raised at trial. See generally Doorbal v. State, 983 So. 2d 464 (Fla. 2008) (appellate counsel could not be ineffective for failing to raise an abandoned motion on appeal).

Finally, the prosecutor argued the defense wanted the jury to believe that the victim's mother, a "very nasty, ugly woman," was extorting money from Suri. The court overruled defense counsel's objection that the comment denigrated the defense. To the extent the prosecutor's characterization of the defense was improper under Florida law, it was not so egregious to require a new trial. See Kidd v. State, 855 So. 2d 1165 (Fla. 5th DCA 2003)(prosecutor characterized defense counsel's argument as having suggested the victim should not be believed because she was acting "trashy so she got what she deserved;" comment was improper but not so egregious to merit a new trial), conflict certified on other grounds see Dragon v. State, 3 So. 3d 1188 (Fla. 2009).

Counsel would not have probably obtained reversal had the foregoing comments been raised on appeal.

II.  Motion to Suppress

Suri contends appellate counsel should have argued the trial court erred by denying his motion to suppress in light of the evidence and discredited statements of police officials at the suppression hearing.

As a general matter, the State must show the suspect made a voluntary, knowing and intelligent waiver of his right to counsel before introducing a confession taken outside the presence of counsel. Miranda v. Arizona, 384 U.S. 436, 475 (1966). A Florida

trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling. Rolling v. State, 695 So. 2d 278, 291 (Fla. 1997). In reviewing a trial court's ruling on a motion to suppress, the Florida appellate court applies a two-step analysis in which the court must determine whether: "(1) competent, substantial evidence supports the trial court's findings of historical fact; and (2) [whether] the trial court reached the correct legal conclusion that [a defendant] knowingly, intelligently and voluntarily waived his Miranda rights." Thomas v. State, 894 So. 2d 126, 136 (Fla. 2004).

Appellate counsel was not deficient for failing to raise the suppression issue on appeal because it lacks merit. Two police officers and Suri testified at the suppression hearing. The trial court found the interrogating officer was credible and Suri was not credible. The officer testified Suri understood and waived his Miranda rights and voluntarily made inculpatory statements to police. These factual findings are supported by the record and are entitled to a presumption of correctness. Further, Suri is unable to demonstrate prejudice because there is no reasonable probability that this ground would have been successful if counsel had raised it on appeal because the trial court's denial of the suppression motion is supported by competent substantial evidence. Counsel was not ineffective for failing to raise this non-meritorious issue that did not have a reasonable likelihood of succeeding on appeal. See Hojan v. State, 3 So. 3d 1204 (Fla. 2009) (competent substantial evidence supported the trial court's denial of motion to suppress where officer testified he read the defendant his Miranda rights, and defendant said he understood them and was

willing to talk to the officer); <u>Diaz v. Sec'y, Dep't of Corr.</u>, 402 F.3d 1136 (11th Cir. 2005) (appellate counsel not ineffective for failing to raise nonmeritorious claims).

Suri also complains the prosecutor bolstered the detective's testimony about his "confession" by asking the jury during closing argument if Tamayo seemed like a liar or struck the jury as an honest police officer. [DE# 15, T. 422-23]. Trial counsel did not object to this statement so it was not preserved for direct appeal. Further, the statements inviting the jury to weigh the officer's credibility was not improper bolstering. <u>See</u> <u>Rogers v. State</u>, 957 So. 2d 538 (Fla. 2007) (prosecutor's arguments about witness credibility rebutted defense counsel's closing argument and did not constitute improper bolstering). Therefore, any suggestion that counsel was deficient for failing to raise the issue or that it could have probably affected the outcome of the proceeding, fails.

Accordingly, the trial court's rejection of these two claims of ineffective assistance of appellate counsel is not contrary to or an unreasonable application of <u>Strickland</u>.

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this <u>8</u>[th] day of March, 2010.

UNITED STATES MAGISTRATE JUDGE

cc:  Francisco Eddy Suri, <u>pro</u> <u>se</u>
     DC# 414528
     Taylor Correctional Institution Annex
     8501 Hampton Springs Road
     Perry, FL 32348

     Lunar C. Alvey, AAG
     Office of the Attorney General
     444 Brickell Ave., Suite 650
     Miami, FL 33131